# Seitzinger *versus* The New Era Life Association.

After a general verdict and judgment thereon against a life insurance association, doing business on the assessment plan, for a breach of its covenant, "to make, levy and collect assessments on its members to pay the plaintiff's claim," it is error in the court below, by order, to restrict the operation of the verdict, judgment and execution to assessments collected and to be collected by the association from its members.

January 21st, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term, 1885, No. 323.

This was an action of covenant by Benjamin F. Seitzinger against The New Era Life Association, of 1876, upon a policy of life insurance issued by the defendant company to the plaintiff, on the life of one Roland, who was a creditor of the plaintiff. The *narr* was in the usual form. A copy of the policy was filed.

The defendant filed an affidavit of defence, alleging that the policy had been forfeited by non-payment of dues; that plaintiff had no insurable interest in the life of Roland; that the policy was a wager, and void, etc. The defendant pleaded the general issue. Covenants performed, *absque hoc* with leave, etc.

The following facts appeared on the trial:

The defendant was incorporated December 31st, 1875, under the general corporation Act of April 29th, 1874. Irvin Roland made an application for membership, or insurance, in the defendant Association. On October 11th, 1878, the defendant Association executed a policy or certificate of membership, whereby it covenanted, "at the expiration of sixty days after said Association shall have received reasonable and satisfactory proof of death of said Irvin Roland, to pay, or cause to be paid, unto Benjamin F. Seitzinger, or his heirs or legal representatives, the sum of five dollars for every $1,000 maxi-

mum sum of benefit actually in force in this Association upon the decease of the said Irvin Roland, and upon which mortuary assessments are paid; provided, the amount so paid shall not exceed the maximum sum of $5,000."

Seitzinger was a creditor of Roland, and effected the insurance to protect his claim. Roland died November 17th, 1880, and on December 4th, 1880, proof of death was duly furnished to the defendant Association, which did not, at the expiration of sixty days thereafter, comply with its covenant, and suit was therefore brought by Seitzinger. At the trial the Association defended upon the ground that there were misrepresentations made by the insured in the application for membership; that the policy had lapsed because of non-payment of dues and assessments; that "reasonable and satisfactory proofs of death" were not furnished; and that the plaintiff below had no insurable interest in the life of Roland.

These questions were left to the jury to determine, and they found a verdict in favor of the plaintiff for the full amount claimed, with interest. A motion for a new trial was made, and on March 21st, 1884, was refused, and a general judgment for $5,883 was entered upon the same day.

On April 12th, 1884, an execution was issued and placed in the hands of the sheriff.

On April 18th, 1884, the defendant presented to the court an affidavit alleging that the Association had made an assessment upon its members to pay the claim after the rule for new trial was discharged, and that notices were to be "forwarded to the membership in a few days." A rule to stay the execution for thirty days for payment of assessments by the members was obtained. This rule was discharged December 27th, 1884.

The court upon the same day, however, made absolute another rule, granted a short time previous, viz., on December 6th, 1884, "to restrict the operation of the verdict, judgment and execution to assessments collected, and to be collected, by the Association from its members." This order was made upon a rule to show cause granted, upon the affidavit of the secretary of the defendant Association, and there were no depositions taken to support the allegation of the affidavit.

It is to this order restricting the operation of the plaintiff's verdict, judgment and execution, that the writ of error is taken.

*Francis E. Brewster, F. Carroll Brewster,* (*H. Willis Bland* with them), for the plaintiff in error.—The Association had been guilty of laches in not levying and collecting the assessments. The court below should not have restricted the

plaintiff in his execution and compelled him to look to the assessments. The Association broke its covenant in not making and collecting assessments; it was sued for the breach and the jury gave damages for the default of the Association in the full amount claimed. The judgment entered on the verdict was a general judgment for an absolute amount, and the plaintiff had the undoubted right to collect it by any means the law afforded him, and the court below had no right to restrict him.

In New Era Life Association v. Leidig, error to Common Pleas of York County, decided by this court, October 25th, 1883, and reported in 4 York Legal Record, p. 135, a suit was brought against this Association upon a similar certificate of membership, and the Association endeavored to limit the beneficiary's remedy to assessments to be made by the Association. Special pleas setting up this defence were stricken off by the court below.

Common Pleas, No. 1, of Philadelphia, in McKnight v. New Era Life Association, 15 W. N. C., 400, which was a suit upon a similar certificate of membership where there had been a general judgment against the Association, refused to restrict the execution.

" The power (to stay execution) should never be exercised unless the case is plain, and the equity of the party asking the interposition of the court is free from doubt or difficulty ": Patterson v. Patterson, 3 Casey, 41.

In Huston v. Mitchell, 14 S. & R., 310, and in Catlin v. Robinson, 2 Watts, 379–80, this court severely condemned attempts of the lower courts, at subsequent terms, to meddle with judgments regularly entered upon verdicts.

" There must be a time when the power of a court to open its judgments, obtained adversely, ceases. In England it ends with the term at which the judgment is signed.

" True there is a reason for this which does not exist with us, arising from the peculiar manner in which the judgment is there made up and kept, but the rule of the English courts would seem to have been recognized as existing here: Catlin v. Robinson, 2 Watts, 379–80; Stephens v. Cowan, 6 Id., 513; Mather's Executors v. Patterson, 9 Casey, 487."

*Wm. H. Browne*, for the defendant in error.—1. The judgment is collectible only by assessments on policy holders.

" A party who enters into a contract in writing, without any fraud or imposition practiced upon him, is conclusively presumed to understand and assent to its terms and legal effect ": Chitty on Contracts, 104; Rice v. Dwight Manf'g Co., 2 Cush., 80.

"When the party has looked to the undeveloped realization of funds by projectors of a particular undertaking, and not to the personal liability of the parties with whom he has contracted his claim, he is confined to the fund, and he cannot enforce payment from individuals; and if the project miscarries and funds are not realized, he has no claim upon anybody or for anything ": 1 Addison on Contracts, bottom p. 299,* 186.

The company was not authorized to accumulate a fund by anticipated assessments.

To quicken and stimulate a company to do its duty in such cases, it has been held that the courts may direct the officers to make a call, or it may appoint proper parties to do so, or it may in certain contingencies appoint receivers for that purpose : Scoville *v.* Thayer, 105 U. S. (16 Otto), 143 ; Curry *v.* Woodward, 53 Ala., 371 ; Robinson *v.* Bank of Darien, 18 Ga., 65 ; Wood *v.* Gunwardville Manf'g Co., 16 Conn., 593.

The obligation was to pay in such portions, and at such times, as the company may rightfully require : Hays *v.* Lycoming Fire Ins. Co., 2 Out., 184. But before this obligation can be enforced, an assessment must be made by the company, or by some competent authority: Chandler *v.* Siddle, 10 Nat. Bankruptcy Reg., 236. When the right of the plaintiff was made known the assessment was ordered. The proceeds of that was all the defendant contracted to pay. The plaintiff is entitled to no more.

2. The lien of a judgment may under the original contract be restricted to a particular property.

3. Every court has power over its own process.

Mr. Justice GREEN delivered the opinion of the court, February 15th, 1886.

In this case an action was brought upon a certificate of membership in the corporation defendant, in and by which the defendant covenanted to pay to the plaintiff, upon the death of one Roland, the sum of $5 for every $1,000 maximum sum of benefit actually in force in the company upon which the mortuary assessments are paid, provided the amount so paid shall not exceed the maximum sum of $5,000. Roland died November 17th, 1880. Proof of death having been furnished, and the defendant not having paid the insurance money, the plaintiff, who was a creditor of the deceased, brought suit upon the certificate or policy, which was tried before a jury upon various defences made. A verdict for the plaintiff was rendered, upon which a general judgment was entered on March 21st, 1884, for $5,883. A rule for a new trial was discharged, and no terms of any kind were imposed

[Seitzinger v. New Era Life Association.]

upon the entry of judgment. Afterwards, on April 18th, 1884, the defendant presented an affidavit in the court below, stating that an assessment upon the members had been made and asking for a stay of execution, which was granted for thirty days. This rule was discharged on December 24th, 1884, but upon the same day the court made absolute another rule granted on December 6th, 1884, restricting the operation of the verdict, judgment and execution to assessments collected, and to be collected, by the company from its members. To this order the present writ of error has been taken. It will be seen that the life assured had ceased in November, 1880, which was more than four years prior to the order restricting the operation of the judgment to assessments upon members. It was more than nine months after the judgment was entered when the restricting order was made, and this order granted a further delay of indefinite extent for the purpose of enabling the defendant to raise the money by assessments in order to pay the judgment.

It is true the learned court below said that if at any time thereafter an attempt was made to overreach the plaintiff, or use the order as a means of delay, they would see that a remedy should be found to meet the state of facts. Since the restraining order was made a further delay of fourteen months has been incurred, and if there was no other reason than this for putting a stop to still more delay, it would be quite sufficient to justify us in removing the restriction.

We think, however, in view of the circumstances, the restraining order should not have been made. A period of nine months after final and general judgment on the verdict was quite sufficient to enable the defendant to raise the money by assessments if such a method was really intended. The mere fact that at the expiration of that period only $285 had been raised with which to pay almost $6,000, was highly persuasive evidence that either the company or its members did not intend to pay the judgment, if they could avoid doing so. All matters of defence against the claim had been heard and considered on the trial, after a long delay of nearly four years from the maturity of the claim. A general judgment without any limitation or restriction had resulted from the trial. We are not conscious of any reason which could suffice for a practical denial of the fruits of the judgment, except one which referred the whole duty of payment to the mere will of the defendant or its members, and such a reason is not for a moment tenable. Even granting that assessments were the source of payment contemplated by the parties to the contract, it cannot be considered that either the making or the payment of such assessments depend in any degree upon the

1 AMERMAN—36

mere option of the company or its members.   We have examined the petition upon which the restricting order was granted, and we fail to discover any fact therein set forth which would justify interference by the court with due process to enforce payment of the judgment.

And now, February 15th, 1886, the order of the court below, making absolute the rule to restrain the operation of the verdict, judgment and execution, is reversed, and the record is remitted for further proceedings.